THE STATE, EX REL. TAYLOR, *v.*
INDUSTRIAL COMMISSION OF OHIO.

(No. 82AP-171—Decided August 10, 1982.)

*Messrs. Perry & Boyuk, Mr. Walter C. Boyuk* and *Mr. F. David Resch,* for relator.

*Mr. William J. Brown,* attorney general, and *Mr. Gerald Waterman,* for respondent.

NORRIS, J. This is an original action in which relator seeks a writ of mandamus directing the Industrial Commission to find him permanently and totally disabled, and to grant him the workers' compensation benefits to which he would thereby be entitled.

Relator's claim for an industrial injury to his back was allowed in 1968, and, in 1974, his claim for silicosis was allowed. In 1978, he filed a motion seeking compensation for permanent and total disability as the result of the combined effect of the two conditions.

This mandamus action is the result of the commission having denied the motion "based on the medical report of Dr.

Davies, evidence in the file and evidence adduced at the hearing."

While there are a number of reports of medical examinations in the file, two are of particular importance to the resolution of this case.

Dan Daneshvari, M.D., examined relator at the request of his attorney and his report, filed with the commission on February 5, 1981, includes this language:

"Overall, the evaluation and examination revealed:

"1. Radiologically: Evidence of a mild to moderate pneumoconiosis, in this instance with all probability, silicosis associated with pulmonary chronic interstitial fibrosis.

"2. Physiologically: Evidence of a moderate to severe chronic obstructive pulmonary disease, in this instance, a combination of chronic bronchiolitis, bronchitis associated with pulmonary emphysema.

"3. Cardio-vascular System: Evidence of a mild to moderate both systolic and diastolic hypertension with old posterior inferior myocardial infarction and coronary artery disease.

"4. Musculo-skeletal: History of back problem, presently on disability for his back injury.

"This man has a gamut of problems, including mild to moderate pneumoconiosis, in this case, silicosis, associated with industrial chronic bronchitis and bronchiolitis; he does have hypertensive arteriosclerotic heart disease, coronary insufficiency and old myocardial injury. He also has musculoskeletal problems which are related to his back. As far as his pulmonary and cardiovascular condition are concerned, he is totally and permanently disabled for any type of gainful work. This disability is the combination of pulmonary impairment and cardio-vascular. However, as far as the occupational disease of silicosis and it's [sic] complication of pulmonary interstitial fibrosis is concerned, his disability in this area does not exceed 30 to 40%.

Despite the fact that this man has been a cigarette smoker all his life, it is obvious that the moderate to severe chronic obstructive lung disease has direct relation, not only to cigarettes, but also to his exposure to extreme dust during his working in the foundry, clay and gravel mines. Overall, it is my opinion that the present pulmonary impairment, including pneumoconiosis, chronic obstructive pulmonary disease and his back injury, make this man totally and permanently disabled to continue at the previous capacity in which he is trained and accustomed to doing. This disability has a direct relation to his occupational exposure and trauma. The presence of hypertensive arteriosclerotic heart disease and old myocardial infarction are rather an insult to the injury, and have no relation to his occupational exposure to dust or occupational injury."

On October 22, 1981, Dwight Davies, M.D., of the commission's medical section, reviewed "[a]ll the medical evidence in these 2 claims," and concluded that:

"The examination report by the pulmonary specialist indicates the claimant probably has mild to moderate silicosis. This silicosis is not totally disabling. In addition to the silicosis, claimant has moderate to severe chronic obstructive pulmonary disease, mild to moderate hypertension, old myocardial infarction, and coronary artery disease.

"* * *

"There were reports in the claim file of examinations by Dr. Blackburn, Dr. Hansell, Dr. Knodt, Dr. Halley, Dr. Kessler and Dr. Kackley regarding the low back. None of these reports furnished sufficient abnormal physical signs to justify an opinion of permanent total disability or permanent total impairment due to the back. Many of these reports included non-recognized and non-related arthritis and degenerative disc change.

"COMMENT:

"The claimant probably has silicosis of minimal to mild degree and this is

superimposed upon non-related chronic obstructive lung disease, hypertensive cardiovascular disease, coronary artery disease and healed myocardial infarction.

"OPINION:

"If all the claimant's ills are accepted, he probably is permanently and totally disabled. If only the silicosis and the lumbosacral contusion and sprain are accepted, claimant is not totally impaired."

Relator has the burden of showing a clear legal right to a writ of mandamus as a remedy from a determination of the Industrial Commission. *State, ex rel. Pressley,* v. *Indus. Comm.* (1967), 11 Ohio St. 2d 141 [40 O.O.2d 141]. Where the record contains some evidence to support the commission's finding, there has been no abuse of discretion by the commission and mandamus will not lie. *State, ex rel. G F Business Equip., Inc.,* v. *Indus. Comm.* (1981), 66 Ohio St. 2d 446 [20 O.O.3d 379]. On the other hand, the burden of showing an abuse of discretion is satisfied and the writ will issue where relator can establish that there is no evidence in the record to support the commission's order. *State, ex rel. Hutton,* v. *Indus. Comm.* (1972), 29 Ohio St. 2d 9 [58 O.O.2d 66].

Relator attempts to satisfy his burden by arguing that the reports relied upon by the commission in denying his claim for permanent total disability, based upon the combined effect of the two allowed conditions, did not constitute evidence upon which the commission could rely. He points out that, with the exception of reports from Dr. Davies and Dr. Daneshvari, none of the medical reports considered both conditions and that those other reports must be rejected under the rule of *State, ex rel. Anderson,* v. *Indus. Comm.* (1980), 62 Ohio St. 2d 166 [16 O.O.3d 199]. He then argues that before the report of Dr. Davies, a non-examining physician, may be considered as evidence, the report must expressly accept the findings of all examining doctors in arriving at his opinion (citing *State, ex rel. Wallace,* v. *Indus. Comm.* [1979], 57 Ohio St. 2d 55 [11 O.O.3d 216] ), and that Dr. Davies did not expressly accept the findings of Dr. Daneshvari.

Relator then concludes that, since Dr. Daneshvari's report is the only one which meets the test of *State, ex rel. Anderson, supra,* and Dr. Daneshvari found him to be permanently and totally disabled from the allowed conditions, there was no evidence to support the commission's order and the writ must issue.

There are several reasons why we agree with relator's contention that Dr. Davies' report does not constitute evidence upon which the commission could base its order. First, it is apparent from a reading of Dr. Davies' report[1] that it does not purport to be (nor was it intended to be) an independent medical opinion as to the extent of relator's disability but, instead, is merely a review and analysis of the medical evidence in the file, coupled with Dr. Davies' recommendation to the Industrial Commission on the state of that evidence. Although the use by the commission of staff physicians in an advisory capacity to analyze evidence is commendable, their advice, like that of staff examining attorneys, should not be converted into evidence; such a practice is contrary to fundamental notions of fairness and evidentiary reliability. *State, ex rel. Wallace,* v. *Indus. Comm., supra,* at 60. Instead, if the commission desires that a staff physician serve as an expert witness by reviewing the medical records and on that basis render an independent medical opinion concerning the extent of a claimant's disability, then safeguards must be utilized similar to those relied upon in a trial to assure the reliability of expert testimony in response to a hypothetical question — the non-examining physician must expressly accept all the findings of the examining physicians, and may then

---

[1] Dr. Davies captioned his report "FILE REVIEW."

express his own independent opinion based upon those findings. *State, ex rel. Wallace,* v. *Indus. Comm., supra.* See, also, *State, ex rel. Kramer,* v. *Indus. Comm.* (1979), 59 Ohio St. 2d 39 [13 O.O.3d 30]; *State, ex rel. Rachow,* v. *Indus. Comm.* (1979), 58 Ohio St. 2d 17 [12 O.O.3d 9].

Here, after reviewing and analyzing the medical evidence in the file, Dr. Davies concluded that none of the examining physicians found relator to be permanently and totally disabled solely from allowed conditions — he gave to the commission his opinion of what the reports in the file revealed, not his independent medical opinion of the extent of relator's disability based upon the physical findings of others.

Second, even if Dr. Davies' report had purported to be an independent medical opinion of relator's condition, it would be insufficient under the mechanical guidelines set down by *State, ex rel. Wallace,* v. *Indus. Comm., supra,* and its progeny. Dr. Daneshvari's report was the only one in the file which met the requirement of *State, ex rel. Anderson,* v. *Indus. Comm., supra,* that both allowed conditions be considered by the examining physician. Dr. Davies' report makes no express reference to the findings of Dr. Daneshvari, and fails to adequately indicate that he accepted all those findings as a necessary prerequisite to rendering an opinion of his own. *State, ex rel. Wallace,* v. *Indus. Comm., supra.*

Nevertheless, we must deny the writ. Where a medical report contains infirmities on its face, such as consideration of unrecognized conditions and a failure to specifically attribute permanent total disability to only recognized conditions, the presence of those infirmities is "evidence" which may be considered by the commission to support its order. *State, ex rel. Higgins,* v. *Indus. Comm.* (Nov. 5, 1981), Franklin App. No. 80AP-951, unreported. Although Dr. Daneshvari's report stated that relator was permanently and totally disabled, the commission would have been warranted in finding that the report failed to specifically attribute that disability solely to the allowed conditions.[2] Accordingly, under this view of Dr. Daneshvari's report, there was no evidence in the file that relator was permanently and totally disabled solely as the result of the allowed conditions.

Relator having failed to establish a clear legal right to a writ of mandamus, issuance of the writ is denied.

*Writ denied.*

WHITESIDE, P.J., and COLE, J., concur.

COLE, J., of the Third Appellate District, sitting by assignment in the Tenth Appellate District.

---

[2] A situation alluded to by Dr. Davies in his file review.